UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CANDACE WILSON-LOVE As executrix of the estate of William Martin Love, deceased and as Next Friend of C.W., K.L., and T.L., minors, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:24-cv-01084-SEB-TAB |
| DEALER'S CHOICE TRUCKAWAY SYSTEM INC. d/b/a TRUCK MOVERS, STEVEN BURKE, DAIMLER TRUCK NORTH AMERICA LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

### ORDER ON DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

Plaintiff Candace Wilson-Love, executrix of the estate of William Martin Love ("Mr. Love") and next of friend of C.W., K.L., and T.L., brought this wrongful death action against Defendants Dealer's Choice Truckaway System Inc. d/b/a TruckMovers ("Truck-Movers"); Steven Burke ("Mr. Burke"); and Daimler Truck North America LLC ("Daimler") (collectively, "Defendants"), asserting that Defendants' negligence was a proximate cause in a single-vehicle pedestrian collision that resulted in Mr. Love's death.[1] (We shall refer to Plaintiff as the "Estate" without distinguishing between the decedent and the estate and/or personal representative unless specified otherwise.)

---

[1] A fourth Defendant, J.B. Hunt Transport, was voluntarily dismissed without prejudice on June 27, 2025. Dkt. 96.

1

Now before the Court are the following motions: TruckMovers's (first) Motion for Judgment on the Pleadings, dkt. 97; Daimler's Motion for Judgment on the Pleadings, dkt. 103; and TruckMovers's (second) Motion for Judgment on the Pleadings, dkt. 139. As described in greater detail below, these motions are **GRANTED in part** and **DENIED in part**.

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Much "[l]ike Rule 12(b) motions, courts grant Rule 12(c) motions only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.' " *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Cap. Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The moving party must, therefore, "demonstrate that there are no material issues of fact to be resolved." *Id.*

In reviewing "the complaint, the answer, and any written instruments attached as exhibits," we must take the facts in the light most favorable to the nonmoving party. *Id.*; *e.g.*, *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). Likewise, a "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). In the interests of construing the pleading "so as to do justice," as directed by Federal Rule of Civil Procedure 8(e), we must "disregard labels and treat pleadings for what they are." *Lengacher v. Wayne*, No. 3:23-cv-547 DRL-MGG, 2024 WL 728050, at *2 (N.D. Ind. Feb. 22, 2024) (quoting *United States v. Griffin*, 782 F.2d 1393, 1399 (7th Cir. 1986)).

2

## BACKGROUND

The following averments are drawn from the Estate's Second Amended Complaint (the "SAC"), dkt. 66, which we accept as true for purposes of ruling on the instant motions for judgment on the pleadings. *Bielanksi v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

### I.    Factual Background

Defendants are each involved in the domestic trucking industry. TruckMovers is an interstate motor carrier that transports goods to customers across the United States. At all relevant times, Mr. Burke was employed by TruckMovers as a commercial driver. Daimler is a shipper who, in this case, selected TruckMovers to transport its (then) recently purchased 2020 Cascadia Freightliner tractor (the "tractor") to a designated location across state lines.

The SAC avers that, on September 14, 2023, at approximately 9:50 p.m., Mr. Burke was operating the tractor (owned by Daimler) in a residential area of Indianapolis, Indiana. As Mr. Burke approached a stop sign at the intersection of North Centennial Street and West 10th Street, he allegedly failed to come to a complete stop before executing a left turn. In so doing, the tractor collided with Mr. Love as he was crossing on foot through the intersection. Mr. Love's injuries proved fatal, resulting in his tragic and untimely death. The Estate alleges, and TruckMovers admits, that Mr. Burke was acting within the scope of his employment at the time of the collision. The Estate also alleges that, at the time of the accident, Mr. Burke was unlawfully operating the tractor in a residential area while under the influence of cocaine, in violation of state and local law.

## II.      Procedural History

On May 22, 2024, the Estate filed this wrongful death action against Defendants in state court. Shortly thereafter, on June 26, 2024, Defendants removed it to federal court on the basis of diversity jurisdiction. *See* dkts. 313, 314 (confirming complete diversity of citizenship). The SAC consists of seven counts, reflecting myriad legal theories against varying subsets of Defendants, including negligence, negligence *per se*, vicarious liability, and joint enterprise. Dkt. 66. The Estate seeks damages for pecuniary losses, loss of companionship, physical pain and suffering, mental anguish, physical impairment, lost wages, and loss of inheritance.

On June 27, 2025, TruckMovers moved for judgment on the pleadings, seeking the dismissal of all direct negligence and joint enterprise claims as well as the Estate's "claims" for damages relating to physical pain and suffering, mental anguish, and physical impairment. Dkt. 97. On July 16, 2025, Daimler moved for judgment on the pleadings on the basis that the Estate's state-law claims are preempted by the Federal Aviation Administration Authorization Act (the "FAAAA"), 49 U.S.C. § 14501(c)(1). Dkt. 103. Several months later, TruckMovers filed a second motion for judgment on the pleadings, this time arguing that the Estate failed to plead facts to support relief under Indiana's wrongful death statutes. Dkt. 139. Although Mr. Burke has not individually moved for judgment on the pleadings, he has joined TruckMovers's motions and supporting briefs in certain limited respects, which we shall note below as relevant. Dkt. 102, 206. TruckMovers's two motions and Daimler's motion for judgment on the pleadings are fully briefed and ripe for ruling.

4

During the pendency of these motions for judgment on the pleadings, TruckMovers and Daimler, respectively, have also moved for summary judgment. Dkt. 141, 146. (Notably, Truckmovers moved for summary judgment on the same day that it filed its second motion for judgment on the pleadings. Dkt. 141.) Additionally, the parties have filed eleven separate motions to exclude expert witnesses as well as several motions to strike. We shall not resolve all of these motions in this order; they will be resolved in due course.

## DISCUSSION

The parties' substantive arguments are analyzed below in the context of TruckMovers's and Daimler's motions for judgment on the pleadings.

## I.    TruckMovers's First Motion for Judgment on the Pleadings

TruckMovers argues that: (1) all direct negligence claims fail as a matter of Indiana law because it has admitted that Mr. Burke was acting within the course and scope of his employment at the time of the accident; (2) the "joint enterprise" claim fails as a matter of Indiana law; and (3) Indiana's wrongful death statutes foreclose the availability of damages for physical pain and suffering, mental anguish, and physical impairment. Mr. Burke has joined TruckMovers's motions as to the second and third arguments. Dkt. 102. We turn to each challenged aspect of the SAC *seriatim*.

### A.    Direct Negligence Claims against TruckMovers

The SAC identifies various theories of liability against TruckMovers, including vicarious liability (based upon Mr. Burke's alleged negligence) and direct negligence (based upon TruckMovers's own negligence in hiring, training, and supervising Mr. Burke). Vicarious liability, on one hand, imputes responsibility to an employer for an employee's

5

negligent conduct that occurs *within* the scope of employment. *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 377 (Ind. 2022). Direct forms of liability, on the other hand, arise when an employee's negligent conduct occurs *outside* the scope of employment. *Id.* Pursuant to either theory, "the plaintiff seeks the same result—employer liability—and recovery is based on the same negligent act—the employee's." *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1178 (Ind. 2017) (citing *Tindall v. Enderele*, 320 N.E.2d 764, 768 (Ind. Ct. App. 1974)). "[W]hen an employer admits that an employee was acting within the course and scope of his or her employment, absent special circumstances, negligent hiring claims are precluded," *id.* at 1179, because "[p]roof of additional elements of negligent hiring . . . would not be relevant to the issues in dispute, would be wasteful of the court's time, and may be unnecessarily confusing to the jury." *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994).

Relying on these principles of Indiana law, TruckMovers contends that the Estate's direct negligence claims (i.e., for negligent hiring, training, supervision, retention, and/or entrustment) must be dismissed because TruckMovers has admitted that Mr. Burke was acting within the scope of his employment. TruckMovers's Am. Answer ¶ 10, dkt. 85. A straightforward application of well-established Indiana law compels us to agree that Truck-Movers's admission concerning the scope of Mr. Burke's employment requires the dismissal of the Estate's direct negligence claims. The Estate raises several arguments to the contrary, though none is availing.

First, the Estate asserts that Federal Rule of Civil Procedure 8(d) permits alternative pleading, regardless of consistency. *See* Fed. R. Civ. P. 8(d)(2)–(3). Notwithstanding the

6

permissibility of alternative pleading, however, the Indiana Supreme Court has clearly explained that a negligent hiring theory "is of no value where," as here, "an employer has stipulated that [its] employee was within the scope of his employment. The doctrine of respondeat superior provides the proper vehicle for a direct action aimed at recovering the damages resulting from a specific act of negligence committed by an employee within the scope of his employment." *Tindall*, 320 N.E.2d at 768.

Next, the Estate contends that its direct liability claims need not be dismissed because TruckMovers has admitted only that Mr. Burke's conduct occurred within the course and scope of his employment—*not* that Mr. Burke's conduct amounted to negligence for which TruckMovers is vicariously liable. (Notably, TruckMovers does agree that, if Mr. Burke "is found negligent, [it] would be vicariously liable." Dkt. 106 at 4.) Because Mr. Burke's underlying negligence has not yet been conclusively established, the Estate argues, dismissal of its direct negligence claims is premature. Indiana law requires no such admission, however. Indiana law is clear: "When an employer admits that an employee was acting within the course and scope of his or her employment, the employer may only be held liable under the doctrine of *respondeat superior*, and thus the plaintiff is precluded from also bringing a negligent hiring claim in most circumstances." *Sedam*, 84 N.E.3d at 1175–76. Accordingly, that the Estate's negligence claim against Mr. Burke remains pending does not, as a matter of law, preclude the dismissal of the Estate's direct negligence claims against his employer, TruckMovers.

As noted above, a plaintiff might be permitted to proceed under both vicarious and direct theories of liability in "special circumstances," such as "when an employee commits

an intentional tort, [when] an employee is incapable of being negligent, . . . when an employer is a charitable institution," or when a plaintiff seeks punitive damages. *Id.* at 1177 n.3 (citing *Lange v. B & P Motor Exp., Inc.*, 257 F. Supp. 319, 323 (N.D. Ind. 1966); *Tindall*, 320 N.E.2d at 768). Here, the Estate asserts that special circumstances exist preventing the dismissal of its direct negligence claims, because the Federal Motor Carrier Safety Regulations (the "FMCSRs") "set a federal floor for motor carrier safety, [and] any state rule that would prevent juries from considering a carrier's independent negligence is preempted and unenforceable." Dkt. 100 at 5. According to the Estate, the FMCSRs impose nondelegable duties that federal motor carriers, like TruckMovers, cannot evade simply by admitting that its employee's alleged negligence occurred within the scope and course of his employment.

The FMSCRs, at most, supply an alternative basis for establishing TruckMovers's direct negligence. Indeed, according to the Estate, the FMSCRs require motor carriers to "ensur[e] driver qualifications, training, regulatory compliance," and the like, all of which overlaps with the Estate's theories that TruckMovers acted negligently in hiring, training, and supervising Mr. Burke. That the FMSCRs might supply an additional avenue through which to impose direct liability upon TruckMovers does not, however, undermine the rationale for the dismissal of redundant direct negligence claims against an employer who has conceded the scope-of-employment element of vicarious liability.

The Estate's final argument is that its negligent entrustment claim need not be dismissed because resolution of that claim does not depend upon the existence (or nonexistence) of an employment relationship. Dkt. 100 at 6. Negligent entrustment claims hinge

8

upon "the supplying of [ ] chattel for probable negligent use." *Johnson v. Patterson*, 570 N.E.2d 93, 96 (Ind. Ct. App. 1991). A person may be liable to another when an "instrument is entrusted to one who is incompetent or irresponsible or who lacks the capacity to safely use or operate the instrumentality." *Id.* As noted by the federal district court on our sister jurisdiction, "[n]egligent entrustment claims are generally not brought against a defendant employer, as 'respondeat superior provides the proper vehicle for a direct action aimed at recovering the damages resulting from a specific act of negligence committed by an employee within the scope of his employment.' " *Davis v. Macey*, 901 F. Supp. 2d 1107, 1112 (N.D. Ind. 2012) (quoting *Tindall*, 320 N.E.2d at 768). Where, as here, the employer has conceded that its employee was acting within the scope of his employment, "the employer is already responsible for the negligent acts of the employee[,] and any additional theory of liability under negligent entrustment [is] unnecessary," duplicative, and potentially prejudicial. *Id.* For these reasons, the Estate's negligent entrustment claim against TruckMovers fails as a matter of Indiana law and shall be dismissed accordingly.

TruckMovers's first motion for judgment on the pleadings shall therefore be **granted** with respect to the Estate's direct negligence claims.

### B. Joint Enterprise Liability

In Count VII of the SAC, the Estate avers as follows:

In addition or alternatively to the foregoing, Truck Movers, Daimler and Burke, or any combination thereof, operated as a joint venture or joint enterprise where there were various agreements, whether express or implied, among the entities and/or individuals, a common pecuniary interest, and various contractual and/or actual rights of control over the enterprise. Each of these defendants contributed resources and/or skills to achieve the common purpose of transporting goods in interstate commerce. Accordingly, each of

9

these Defendants are [sic] liable for all negligence and negligence per se herein under a theory of joint venture or joint enterprise as a result of the negligent acts and/or omissions alleged in this Complaint.

SAC ¶ 88, dkt. 66.

TruckMovers seeks the dismissal of the Estate's "joint enterprise" claim on three grounds. First, TruckMovers argues, the doctrine of joint enterprise is entirely inapplicable to the facts of this case, since the doctrine pertains to situations in which the negligence of a driver can be imputed to the passenger—not to situations where a plaintiff is attempting to make all defendants liable for the conduct of one defendant. Second, according to Truck-Movers, the Estate's invocation of joint enterprise liability reflects an attempt to impose joint and several liability upon Defendants, in contravention of Indiana's Comparative Fault Act, which requires damages to be allocated among responsible parties according to their degree of fault. *See* Ind. Code § 34-51-2-1 *et seq.* Third, to the extent that the Estate's joint enterprise averments pass legal muster, TruckMovers asserts that they are unfairly cumulative and should be dismissed as such. The Estate responds that TruckMovers has "misapplied the applicable law" in its motion and contends that its allegations of a "joint venture" (as an alternative to "joint enterprise") should proceed as pleaded. Dkt. 100 at 6–7.

A joint enterprise exists where the parties share joint control over the management, operation, course, and conduct of their activity; joint financial interest in their activity; an equal right to direct and govern each other's movements; and an express or implied agreement regarding that activity. *See, e.g.*, *Benson v. Sorrell*, 627 N.E.2d 866, 868–69 (Ind. Ct. App. 1994); *McKinney v. Pub. Serv. Co. of Indiana*, 597 N.E.2d 1001, 1009 (Ind. Ct. App. 1992) (outlining the elements of a "joint venture" and noting that "at least one jurist . . . has

10

advocated the abandonment of the doctrine of imputed negligence in view of his state's adoption of comparative fault"). Similarly, "[i]n a joint venture, the parties must be bound by an express or implied contract providing for (1) a community of interest, and (2) joint mutual control" as well as a profit-sharing agreement. *Linares v. El Tacarajo*, 119 N.E.3d 591, 600 (Ind. Ct. App. 2019) (citation modified). Indiana courts describe "the doctrine of imputed negligence through joint enterprise" as "limited to actions against a third party, [ ] where an injured passenger may have his own recovery against a third party diminished or defeated because of negligence on the part of his own driver with whom he is engaged in a joint enterprise. *Gilmer v. Carney*, 608 N.E.2d 709, 711 (Ind. Ct. App. 1993).

Given the overlapping legal elements between joint "enterprises" and "ventures," it is not entirely clear to us how one theory of liability is necessarily an "alternative" to the other, as alleged by the Estate. In any event, whether a joint venture exists such that one defendant's liability may be imputed to another[2] is ultimately a question of fact, which we are not prepared to resolve on the basis of the pleadings alone. *See DLZ Indiana, LLC v. Greene Cnty.*, 902 N.E.2d 323, 328 (Ind. Ct. App. 2009). Although we agree with Truck-Movers that the Estate will not be entitled to "double recovery," we find that TruckMovers's request for the dismissal of the Estate's joint enterprise/venture claim is premature. Thus, TruckMovers's motion shall be **denied**.

---

[2] Of course, the possibility that TruckMovers is vicariously liable for Mr. Burke's negligence *is* itself a form of imputed liability under Indiana law. *See Dugan v. Stucker*, 262 N.E.3d 851 (Ind. Ct. App.), *trans. denied,* 267 N.E.3d 979 (Ind. 2025) (unpublished).

11

### C.    Damages for Physical Pain and Suffering, Mental Anguish, & Physical Impairment

TruckMovers seeks the dismissal of the Estate's "damages claims" for physical pain and suffering, mental anguish, and physical impairment on the basis that Indiana's wrongful death statutes do not permit such remedies. "Because wrongful death actions are purely creatures of statute, they are strictly construed." *Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911 (Ind. Ct. App. 1994), *opinion adopted,* 678 N.E.2d 110 (Ind. 1997). Indiana law is clear that "[o]nly those damages prescribed by the applicable wrongful death statute are recoverable . . . ." *Edna Martin Christian Ctr., Inc. v. Smith*, 202 N.E.3d 1118, 1121 (Ind. Ct. App. 2023).

Here, the SAC enumerates several categories of damages allegedly caused by Defendants' negligence. SAC ¶ 90, dkt. 66. However, prayers for relief do not constitute independent "claims" subject to dismissal on a motion for judgment on the pleadings. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. Sis-Bro Inc.*, No. 24-cv-968-JPG, 2024 WL 3845359, at *6 (S.D. Ill. Aug. 16, 2024) (denying motion to dismiss requests for damages because "[m]otions to dismiss . . . are for *claims*, not prayers for relief") (emphasis in original). Accordingly, TruckMovers's request for the dismissal of the Estate's "damages claims" shall be **denied** with the caveat that the Estate's damages, if any, are necessarily limited to those allowed by Indiana law.

## II.    Daimler's Motion for Judgment on the Pleadings

Daimler's motion seeks the dismissal of the Estate's negligence claims against it (including negligence, negligence *per se*, negligent selection, vicarious liability, and joint

12

enterprise) on the grounds of express preemption. Insofar as express preemption does not impel the dismissal of all claims against it, Daimler argues, the Estate's negligent selection and joint enterprise claims as well as of any requests for damages that are not permitted under Indiana law must be dismissed.

At the outset, we can quickly dispose of Daimler's argument relating to allegedly unrecoverable damages for the same reasons outlined above: to wit, a prayer for relief is not a standalone claim subject to dismissal. We address Daimler's remaining arguments below.

### A.    Express Preemption under the FAAAA

"The Supremacy Clause of the Constitution establishes a rule of decision precluding courts from 'giv[ing] effect to state laws that conflict with federal laws.' " *Nationwide Freight Sys., Inc. v. Illinois Com. Comm'n*, 784 F.3d 367, 372 (7th Cir. 2015) (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015)). "Of the three recognized types of preemption, it is express preemption that is at issue in this case, as the FAAAA states explicitly what states may and may not do with respect to motor carriers of property." *Id.* at 372–73 (citation modified). Our task, therefore, "is one of statutory construction," as we must determine whether the Estate's claims against Daimler fall within the ambit of the FAAAA, or whether any of the FAAAA's exceptions apply. *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 457 (7th Cir. 2023).

Congress enacted the FAAAA in 1994 "as part of a greater push to deregulate interstate transportation industries" based on its "finding that state governance of intrastate transportation of property had become unreasonably burdensome to free trade, interstate

13

commerce, and American consumers." *Id.* (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013)) (citation modified). To effectuate this goal, the FAAAA bars "burdensome state regulations." *Id.* (citing 49 U.S.C. § 14501(a)(1), (b)(1), (c)(1)).

In this case, Daimler invokes the express preemption provision under § 14501(c), which addresses "Motor Carrier of Property." Section 14501(c)(1) provides that states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

"Several exceptions then follow," *Ye*, 74 F.4th at 457, though only one, the "safety exception," is relevant to the case at bar. Under the safety exception, § 14501(c)(1)

> shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

*Id.* § 14501(c)(2)(A). Altogether, §§ 14501(c)(1) and 14501(c)(2)(A) reveal "the overarching statutory structure: Congress broadly disallowed state laws that impede its deregulatory goals, but it made a specific carveout for laws within a state's 'safety regulatory authority . . . with respect to motor vehicles,' even though such laws may burden interstate commerce." *Ye*, 74 F.4th at 458.

Our analysis proceeds in two steps. First, we address whether the Estate's negligence claims against Daimler fall within the scope of the FAAAA's express preemption provision

prohibiting the enforcement of state laws "related to a . . . service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). If so, our next step is to determine whether the safety exception applies.

Before conducting these inquiries, we briefly note that, although Daimler seeks the dismissal of the Estate's negligence claims in their entirety, the delineation among the Estate's various theories is not entirely clear to us nor whether the preemption rationale relevant to negligent selection (and/or hiring) claims is directly applicable to claims of imputed liability (e.g., vicarious liability and joint enterprise). This lack of clarity in the parties' arguments requires us to focus principally on the Estate's negligent selection claim, as the (binding) legal authorities cited by the parties and referenced herein provide direct guidance only as to this specific theory.

The Estate's contention that a preemption analysis is premature at this stage of the litigation due to the lack of factual development can be disposed of without difficulty. Courts in our circuit (and beyond) routinely decide FAAAA preemption on motions for judgment on the pleadings, and the Seventh Circuit itself has affirmed those determinations on more than one occasion. *E.g.*, *Ye*, 74 F.4th 457; *Montgomery v. Caribe Transp. II, LLC*, 124 F.4th 1053, 1055 (7th Cir.), *cert. granted,* 146 S. Ct. 79 (2025). The Estate's argument in favor of delay is unavailing.

> *1.   Whether the Estate's Negligent Selection Claim Against Daimler Is Expressly Preempted by § 14501(c)(1)*

Daimler, as the party seeking to establish preemption, must demonstrate: (1) that a state "enacted or attempted to enforce a law"; and (2) that the state law "relate[s] to carrier

rates, routes, or services 'either by expressly referring to them, or by having significant economic effect on them.' " *Nationwide Freight*, 764 F.3d at 373–74 (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996)).

There is no dispute that the first element is satisfied here: "Common law tort claims," like those interposed by the Estate, "fall comfortably within the language of the preemption provision that, by its terms, applies to state laws, regulations, or other provisions having the force and effect of law." *Ye*, 74 F.4th at 459 (citation modified). At issue, therefore, is whether the Estate's "proposed enforcement of [Indiana's] common law of negligence would have a significant economic effect on" motor carrier services. *Id.*

The disagreement between the Estate and Daimler occurs at two levels: First, the Estate maintains that § 14501(c)(1) cannot preempt its claims against Daimler because Daimler is a *shipper*—not a motor private carrier, broker, or any other entity specifically named in § 14501(c)(1). Second, the Estate argues that because shippers are not listed in § 14501(c)(1), enforcing Indiana common law against Daimler does not "relate to" any "service of a motor carrier . . . with respect to the transportation of property." 29 U.S.C. § 14501(c)(1). We address each argument in turn.

Whether the FAAAA preempts state law claims against *shippers*, as distinct from brokers and the like, is a matter of first impression in our circuit. The facts presented in this litigation differ from other cases involving express preemption under the FAAAA, which predominately involve negligent hiring and/or selection claims against brokers—i.e., "the person who connects the shipper and carrier" and "acts as the middleman between the two to arrange for the transportation of the shipper's goods by the carrier . . . ." *Aspen Am. Ins.*

16

*Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1264–65 (11th Cir. 2023). Here, by contrast, a shipper (Daimler) selected a motor carrier (TruckMovers) without the assistance of an intermediary.

In the Estate's view, the distinction between brokers and shippers is dispositive because § 14501(c)(1) expressly includes the former but not the latter. If Congress intended to include "shippers" within § 14501(c)(1)'s preemptive scope, the Estate argues, it easily could (and would) have done so, given that the term "shippers" is defined elsewhere within Title 49 of the United States Code. Dkt. 114 at 4 (citing, *inter alia*, 49 U.S.C. § 13102(13)).[3] Thus, the Estate reasons, the omission of any explicit reference to "shippers" evinces Congress's intent to exempt shippers from the FAAAA's preemptive breadth. *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("A textual judicial supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision.").

However, the Estate's position—that the FAAAA does not preempt state law claims against shippers—is squarely at odds with the Supreme Court's holding in *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364 (2008). In *Rowe*, a trade association of air and motor carriers challenged a Maine statute requiring, in relevant part, that licensed

---

[3] Section § 13102(13) defines "individual shipper[s]" as "any person who," among other things, "is the shipper of a *household goods* shipment." 49 U.S.C. § 13102(13)(A) (emphasis added). Although we are dubious that the tractor subject to the transportation services petitioned by Daimler qualifies as a "household good" relating to "personal effects and property used or to be used in a dwelling," *id.* § 13102(10), we have adhered to the parties' apparent agreement that Daimler was a "shipper" for purposes of resolving the instant motion.

17

tobacco shippers utilize delivery services that verified the legal age of their buyers. *Id.* at 368–69. In holding that FAAAA preemption applied, the Supreme Court explained that the Maine statute "create[ed] a direct 'connection with' motor-carrier services" through its "focus[ ] on trucking and other motor carrier services." *Id.* at 371. Likewise, the state law "produce[d] the very effect that the [FAAAA] sought to avoid, namely, a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree) the services that motor carriers will provide." *Id.* at 372. Notably, the Court "concede[d] that the regulation . . . [wa]s less 'direct' than it might be, for it t[old] *shippers* what to choose rather than *carriers* what to do." *Id.* at 372 (emphasis in original). At bottom, however, "the effect of the regulation [wa]s that carriers w[ould] have to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate. And that being so, 'treating sales restrictions and purchase restrictions differently for pre-emption purposes would make no sense.' " *Id.* at 372 (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 255 (2004)).

A straightforward application *Rowe* forecloses the Estate's argument that shippers lie beyond the scope of FAAAA preemption. Thus, we reject the Estate's argument to the contrary and turn to the issue of whether the Estate's negligent selection claim against Daimler relates to a price, route, or service of any motor carrier with respect to the transportation of property. Upon careful review of Daimler's and the Estate's competing arguments, we answer this question in the affirmative.

The Seventh Circuit's 2023 decision in *Ye v. GlobalTranz Enterprises, Inc.* is particularly instructive. 74 F.4th 453 (7th Cir. 2023). *Ye* arose out of a fatal vehicular collision

18

involving a motorcyclist and a commercial truck driver. The motorcyclist's surviving spouse brought a negligence action against the driver's employer, a motor carrier, as well as the broker who selected the motor carrier. The district court dismissed the claims against the broker on grounds of FAAAA preemption. *Id.* at 456. In affirming the dismissal, the Seventh Circuit concluded that the plaintiff's negligent hiring theory "str[uck] at the core of [the defendant's] broker services by challenging the adequacy of care the company took—or failed to take—in hiring [a motor carrier] to provide shipping services." *Id.* at 459. Continuing, the Seventh Circuit explained:

> [E]nforcement of such a claim—and the accompanying imposition of liability—would have a significant economic effect on broker services. By recognizing common-law negligence claims, courts would impose in the name of state law a new and clear duty of care on brokers, the breach of which would result in a monetary judgment. . . . To avoid these costly damages payouts, . . . brokers would change how they conduct their services— for instance, by incurring new costs to evaluate motor carriers. Then, by changing their hiring processes, brokers would likely hire different motor carrier than they would have otherwise hired without the state negligence standards.

*Id.* at 459.

Read together, *Rowe* and *Ye* impel the conclusion that § 14501(c)(1) preempts the Estate's state law negligent selection claim against Daimler. Although Daimler differs from the defendant in *Ye* in that Daimler is a shipper rather than a broker, the likely consequences of imposing tort liability are similar: shippers "would change how they conduct their" operations, likely altering their selection processes and hiring different motor carriers or expending additional resources to hire brokers in order to distance themselves from potential liability. *Ye*, 74 F.4th at 459. As with the negligent hiring claim in *Ye*, the Estate's negligent

selection claim here necessarily implicates the deregulatory purposes of the FAAAA. As such, we hold that the state law negligent selection claim against Daimler is preempted by the FAAAA.

### 2.    *Whether the Safety Exception Applies*

Having determined that FAAAA preemption applies, we next assess whether the Estate's claim "may be saved" by the safety exception. *Id.* at 460. As noted above, § 14501(c)(2)(A) excepts "laws within a state's 'safety regulatory authority with respect to motor vehicles . . . .' " *Id.* (citation modified). The Seventh Circuit has conclusively re-solved the meaning of the key phrase "with respect to motor vehicles," holding that it " 'massively limits the scope' of the safety exception" by "requir[ing] a direct link between a state's law and motor vehicle safety." *Id.* (quoting *Dan's City Used Cars*, 569 U.S. at 261).[4]

Applying this statutory interpretation to the facts presented in *Ye*, the Seventh Circuit held that the plaintiff's negligent hiring claim against the defendant broker did not implicate the safety exception. *Id.* "Absent unusual circumstances, the relationship between brokers and motor vehicle safety will be indirect, at most." *Id.* at 461. Indeed, the plaintiff's allegations in *Ye* "mirror[ed] practical realities"; to wit, that brokers typically do "not own

---

[4] We recognize that the scope of the FAAAA's safety exception is the source of a circuit split: The Seventh and Eleventh Circuits, on one hand, hold that state tort claims against brokers do not implicate the safety exception, *Ye*, 74 F.4th at 460–66; *Aspen Am. Ins. Co.*, 65 F.4th at 1268–72, and the Sixth and Ninth Circuits, on the other hand, hold that such state tort claims do fall within the safety exception, *Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847 (6th Cir. 2025); *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020). The Supreme Court is poised to resolve this circuit split in *Montgomery v. Caribe Transp. II, LLC*, 124 F.4th 1053, 1055 (7th Cir.), *cert. granted,* 146 S. Ct. 79 (2025), though, at the time of the issuance of this order, no deci-sion has been handed down.

or operate motor vehicles" in the same manner that motor carriers do. *Id.* To see "the connection between . . . a broker and motor vehicle safety requires an extra link to connect the alleged chain of events: [the broker]'s negligent hiring of [the motor carrier] resulted in [the motor carrier]'s negligent entrustment of a motor vehicle to a negligent driver who, in turn, caused a collision that resulted in [the victim]'s death." *Id.* at 462. This "additional link . . . between a broker hiring and motor vehicles," in the Seventh Circuit's view, was "too attenuated to be saved under § 14501(c)(2)(A)." *Id.*

Here, Daimler contends that its role in the underlying events mirrors that of the broker in *Ye*, meaning that an "additional link" is logically necessary to relate the Estate's negligent selection claim to motor vehicle safety. Dkt. 104 at 7–8. The Estate rejoins that, unlike the defendant broker in *Ye*, who neither owned nor operated motor vehicles, Daimler admittedly does own the tractor involved in the underlying accident. In the Estate's view, Daimler's ownership of the motor vehicle in this case creates a "direct link" that places the Estate's claims against it naturally within the FAAAA's safety exception.

Certainly, as the Estate contends, Daimler has conceded its ownership of the tractor. However, we fail to see how its ownership alone is a sufficient basis on which to except the Estate's negligent selection claim from the FAAAA's preemption, especially since the Estate does not allege that a defect in the tractor itself caused or contributed to the accident.[5]

---

[5] The only specific argument Daimler raises to support the dismissal of the Estate's vicarious liability and joint enterprise claims is that the SAC fails to plead any connection between Daimler and Mr. Burke other than that relevant to the Estate's negligent selection claim: to wit, Daimler's *selection* of TruckMovers, Mr. Burke's employer. Dkt. 104 at 8. This contention, however, ignores the Estate's allegation that Daimler is vicariously liable by virtue of its *ownership* of the tractor. Whether or to what extent Daimler's ownership of the tractor supports an indirect theory of liability

21

Daimler's conduct giving rise to the Estate's negligent selection claim is, at bottom, indistinguishable from that alleged in *Ye*: to wit, the alleged negligent selection of a motor carrier, which the Seventh Circuit has described as requiring an "additional link [that] goes a bridge too far" in its relation to motor vehicle safety. *Ye*, 74 F.4th at 462.

We therefore conclude that the Estate's negligent selection claim against Daimler falls within the ambit of § 14501(c)(1)'s preemptive scope and that the § 14501(c)(2)(A)'s safety exception is inapplicable. Because the FAAAA preempts the Estate's negligent selection claim, Daimler's motion for judgment on the pleadings is **granted** in this respect. The Estate's negligent selection claim, as asserted in Count VI of the SAC, must and therefore shall be **dismissed**.

### III.    TruckMovers's Second Motion for Judgment on the Pleadings

On October 30, 2025 (on the same day that it moved for summary judgment), Truck-Movers filed a second motion for judgment on the pleadings, arguing that the Estate failed to plead facts sufficient to state a claim for relief under any of Indiana's wrongful death statutes, thus warranting the dismissal of "all claims with prejudice." Dkt. 140 at 6.

"At common law, there was no tort liability for killing another 'because personal injury actions did not survive the injured party's death.' " *Smith*, 202 N.E.3d at 1121 (quoting *Pfaff*, 643 N.E.2d at 911). "Actions for wrongful death are [thus] purely statutory in Indiana." *Pfaff*, 643 N.E.2d at 911. "The purpose of [Indiana's] wrongful death statutes is

---

has not been presented to us at this juncture. As such, we decline to dismiss the Estate's vicarious liability and joint enterprise theories against Daimler. *See Montgomery*, 124 F.4th at 1055–58 (affirming summary judgment ruling on the merits of a vicarious liability claim brought against freight broker).

22

to compensate surviving dependents for pecuniary losses but not for loss of life." *Smith*, 202 N.E.3d at 1121.

Indiana's General Wrongful Death Statute ("GWDS"), Ind. Code § 34-23-1-1, "delineates two separate categories of decedents." *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 678 (Ind. 2015). The first encompasses "all decedents generally" and allows an estate to recover "a fixed list of death-related expenses," including medical, hospital, funeral, and burial expenses. *Id.* (quoting I.C. § 34-23-1-1) (citation modified). "The remaining damages, if any, must 'inure to the exclusive benefit of the widow or widower . . . and to the dependent children, if any, or dependent next of kin . . . .'" *Id.* (quoting I.C. § 34-23-1-1) (citation modified).

"The second includes only those decedents who 'depart this life leaving no such widow or widower, or dependent children or dependent next of kin," in which case "the damages inure to the exclusive benefit of the person or persons furnishing services related to the decedent's death, and the personal representative is expressly entitled to recover reasonable attorneys' fees in prosecuting or compromising the action." *Id.* (quoting I.C. § 34-23-1-1) (citation modified).

"[E]very decedent in the second GWDS category also satisfies the conditions to bring suit under either" of two additional wrongful death provisions: the Adult Wrongful Death Statute ("AWDS"), Ind. Code § 34-23-1-2; or the Child Wrongful Death Statute ("CWDS"), *id.* § 34-23-2-1. *Frederick*, 39 N.E.3d at 679. The AWDS "governs actions for the wrongful death of unmarried adult persons with no dependents," whereas the CWDS "permits parents or guardians to obtain damages for the wrongful death of unmarried

children with no legal dependents and who were under twenty years of age (or under twenty-three and still in school)." *Smith*, 202 N.E.3d at 1122.

These three avenues—the GWDS, the AWDS, and the CWDS—allow for different forms of recovery, depending upon which category the decedent falls into. Most relevant for our purposes is the distinction between the GWDS and the AWDS: the GWDS allows an estate to recover damages for lost earnings as well as loss of love and companionship, as determined by a court or jury upon consideration of, *inter alia*, the value of future support and continued care that the dependent children could reasonably have expected to receive from the decedent. *See* Ind. Model Civil Jury Instructions 725 (2026). Under the AWDS, damages for lost earnings are disallowed entirely, Ind. Code § 34-23-1-2(g); and damages for the loss of love and companionship (in an aggregate amount no greater than $300,000) may inure to the benefit of nondependent children only upon a showing of a "genuine, substantial, and ongoing relationship with the adult person . . . ." *Id.* § 34-23-1-2(e)–(f). "[T]he determination of dependency controls which statute (the GWDS or the AWDS) applies." *Hubbard v. City of Bedford, Indiana*, No. 4:24-cv-00103-TWP-KMB, 2025 WL 1939879, at *4 (S.D. Ind. July 11, 2025) (citing *Est. of Sears v. Griffin*, 771 N.E.2d 1136, 1138–39 (Ind. 2022)).

In our case, TruckMovers argues that the Estate cannot avail itself of any potential recourse under Indiana's wrongful death statutes due to its failure to aver whether Mr. Love "left behind a widow or widower, dependent child(ren), and/or dependent next of kin" within the meaning of the GWDS as well as whether Mr. Love "was an 'adult person' or a 'child' " within the meaning of the AWDS to the CWDS, respectively. Dkt. 140 at 1.

24

Beginning with the latter, we are entirely unpersuaded by TruckMovers's argument that the Estate's apparent failure to explicitly specify whether Mr. Love was an "adult person" or a "child" merits the wholesale dismissal of this action. Our review of the relevant pleadings reveals no support whatsoever for the contention that the Estate sought relief pursuant to the CWDS. Likewise, TruckMovers's own prior submissions to the Court acknowledge that this action arises under either the GWDS or the AWDS. *See, e.g.*, Truck-Movers's Am. Answer ¶ 14, dkt. 85 at 26 (citing to the AWDS); Dkt. 98 at 12 (recognizing that either the GWDS or the AWDS applies to the Estate's claims). TruckMovers's request that we foreclose all potential avenues of recovery on the basis of (what amounts to nothing more than) a technicality is thus contrary to the letter and spirit of our procedural rules, which arc towards "ensuring each litigant a full and fair hearing on the merits of his or her claim or defense." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (citation modified).

As for whether the SAC sufficiently alleges that Mr. Love had minor dependent children at the time of his death such that the Estate may pursue recovery under the GWDS, as opposed to the AWDS, the Estate's response in opposition notably does not defend the adequacy of its pleading. Rather, the Estate argues that "a minimal review of the record" belies TruckMovers's contentions, as evidence produced in discovery apparently establishes that Mr. Love did in fact have minor dependent children at the time of his death. Dkt. 176 at 1. To support the veracity of its position, the Estate has submitted documentary evidence, including two deposition testimonies of the minors' respective mothers as well

as K.L.'s (unredacted) birth certificate.[6] In so doing, the Estate asks that we convert Truck-Movers's motion to a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 12(d), and deny it as such.

"A district court has discretion as to whether to convert a motion for judgment on the pleadings into a motion for summary judgment." *Federated Mut. Ins. Co.*, 983 F.3d at 313. "If, however, a court chooses to consider materials outside the pleadings, the discretion ends, and the court 'must' treat the motion as one for summary judgment." *Id.* (quoting Fed. R. Civ. P. 12(d)). In this case, the Estate has not shown that our consideration of matters beyond the pleadings is either necessary or appropriate. Accordingly, we decline to consider the materials submitted by the Estate and thus need not convert TruckMovers's motion for judgment on the pleadings to one for summary judgment.

Returning to the SAC, the relevant inquiry is whether the Estate has alleged facts from which we can plausibly draw an inference that minors C.W., K.L., and T.L. were Mr. Love's dependent children. The ultimate determination of dependency entails "proof of . . . a need or necessity of support on the part of the person *alleged* to be dependent . . . coupled with the contribution of such support by the deceased." *New York Cent. R.R. Co. v. Johnson*, 127 N.E.2d 603, 607 (Ind. 1955) (emphasis added). Beyond inclusion of the minors' initials in the caption and three bareboned paragraphs introducing each as "a minor," *see* SAC ¶¶

---

[6] The Estate filed an unredacted copy of K.L.'s birth certificate, in violation of Federal Rule of Civil Procedure 5.2, which "requires the use of initials rather than names for minors." *Doe v. Trs. of Indiana Univ.*, 101 F.4th 485, 491 (7th Cir.), *cert. denied sub nom. Doe v. The Trs. of Indiana Univ.*, 145 S. Ct. 546 (2024). The Court shall *sua sponte* direct the Clerk to place K.L.'s birth certificate under seal. Dkt. 176-3.

3–5, dkt. 66, the SAC contains no averments whatsoever concerning the nature and extent of the minors' relationship to Mr. Love, never mind their alleged dependency. "[F]ederal courts require notice pleading, not fact pleading complete with all the minutiae." *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019). Here, the SAC's sparse references to C.W., K.L., and T.L can hardly be said to surpass this minimal threshold. Because the SAC lacks sufficient allegations from which we can plausibly draw an inference of dependency, we have little trouble concluding that the Estate has failed to state a claim under the GWDS.

Accordingly, TruckMovers's second motion for judgment on the pleadings shall be **granted** insofar as the Estate has failed to state a claim for relief under the GWDS; and **denied** insofar as the Estate has successfully pleaded a claim under the AWDS. Whether the Estate can marshal evidence to support an award of damages for nondependent children, pursuant to the AWDS, shall be determined at the appropriate juncture.

## CONCLUSION

For the foregoing reasons, the Court hereby rules as follows:

- TruckMovers's (first) Motion for Judgment on the Pleadings is **GRANTED** as to the Estate's direct negligence claims; and **DENIED** as to the Estate's joint enterprise claim and prayers for relief. Dkt. 97.

- Daimler's Motion for Judgment on the Pleadings is **GRANTED** as to the Estate's negligent selection claim; and **DENIED** as to the Estate's joint enterprise and vicarious liability claims and prayers for relief. Dkt. 103.

- TruckMovers's (second) Motion for Judgment on the Pleadings is **GRANTED** as to the Estate's recovery under the GWDS; and **DENIED** as to the Estate's recovery under the AWDS. Dkt. 139.

Additionally, the Clerk is **DIRECTED** to place K.L.'s unredacted birth certificate **UNDER SEAL**, pursuant to Federal Rule of Civil Procedure 5.2. Dkt. 176-3. The Clerk is also **DIRECTED** to correct C.W.'s initials on the docket.

No partial final judgment shall issue. This matter shall proceed accordingly.

IT IS SO ORDERED.

Date:

4/21/2026

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Aaron C. Cox
aaron.cox@icemiller.com

Ramona Frazier
The Witherspoon Law Group
rfrazier@twlglawyers.com

Christina Laun Fugate
ICE MILLER LLP (Indianapolis)
christina.fugate@icemiller.com

Tiffany R. Guthrie
Kightlinger & Gray, LLP
tguthrie@k-glaw.com

Andrea Howell
Ice Miller LLP
andrea.howell@icemiller.com

Thomas J. Jarzyniecki, Jr.
KIGHTLINGER & GRAY, LLP (Indianapolis)
tjarzyniecki@k-glaw.com

Paul K Leary, Jr
Cozen O'Connor
pleary@cozen.com

Jeremy D. Lemon
HUNT SUEDHOFF & KALAMAROS LLP (Fort Wayne)
jlemon@hsk-law.com

Derek Harold MacKay
Knight MacKay Morrow, LLC
mackay@knightnicastro.com

Kathleen Meara
Knight MacKay Morrow, LLC
meara@kmmlaw.com

Aubrey Nick Pittman
The Pittman Law Firm, P.C.
pittman@thepittmanlawfirm.com

Carolyn E. Riggs
ICE MILLER LLP (Indianapolis)
carolyn.riggs@icemiller.com

Linje Rivers
The Witherspoon Law Group
rivers@twlglawyers.com

Tasha Rebecca Roberts
ROBERTS LITAGATION GROUP
troberts@robertslitigation.com

Nuru Witherspoon
Nuru Witherspooon
stegall@twlglawyers.com